## T. M. CAMPBELL, RECEIVER, AND THE INTERNATIONAL & GREAT NORTHERN RAILWAY COMPANY v. G. S. WING.

### No. 387.

1. **Negligence of Conductor.** — W. sued to recover damages resulting from injuries received in a collision between the forward and hinder end of a train, caused, as he alleged, by the negligence of the conductor in allowing the rear end of the train to come upon the forward end while it was taking water at a tank, which neglect was the result of the conductor's intemperance. *Held*, that before a recovery could be allowed, plaintiff should have shown not only that the habits of the conductor were such as rendered him unfit for his position, and that this was known, or should have been known to the receiver, and was unknown to plaintiff, but in addition, that by reason of his habits of intemperance, the conductor was guilty of the negligence complained of, and that such negligence was the proximate cause of the accident.

2. **Proper Charge.** — The following charge should have been given: "If the conductor knew nothing of the detachment of the train, and by reasonable diligence could not have known it, and it was done without his direction and without his knowledge or consent, then defendants would not be liable, and plaintiff can not recover, no matter what the habits of the conductor were, or what his condition at the time of the accident."

3. **Evidence of Time Lost.** — Evidence of damage sustained by loss of time, by reason of injuries sustained, is admissible when supported by averment that plaintiff has been unable to follow his occupation or perform other labor since the time of his injuries.

APPEAL from Anderson. Tried below before H. S. MCMEANS, Esq., Special Judge.

*G. H. Gould*, for appellant Campbell.—1. The court erred in permitting plaintiff to prove, over defendants' objection, what wages he was

getting at the time of his injury, because there were no pleadings to authorize such testimony. Gillies v. Wofford, 26 Texas, 76; Wheeler v. Wheeler, 65 Texas, 576; Railway v. Wesch, 21 S. W. Rep., 62.

2. If the engine, with part of the cars, was detached from the remainder of the train for the purpose of going ahead to take water, and that was done, not by permission or authority of defendants, but for the convenience of the train men, and plaintiff knew it, or by reasonable diligence and attention to what was going on could have known it, and made no objection, he voluntarily participated in the extra risk, if any, and can not recover damages for the injuries received as the proximate result of said acts. Robinson v. Railway, 46 Texas, 550; Railway v. Harriett, 80 Texas, 83; Hammond v. Railway, 48 Am. and Eng. Ry. Cases, 381, 382.

3. The allegata and the probata must agree. Whatever is necessary to prove, it is necessary to allege; and as plaintiff in his petition fixed no value to his lost time, it was error to hear evidence on that subject, and to submit that question to the jury. Railway v. Curry, 64 Texas, 87; Railway v. Simcock, 81 Texas, 478; Railway v. Lock, 20 S. W. Rep., 855.

4. The court erred in charging the jury that they could find for plaintiff compensation for lost time, because there was no allegation in his petition fixing the value of lost time, and the evidence on that subject was erroneously admitted. Railway v. Schmidt, 61 Texas, 282; Zapp v. Michaelis, 58 Texas, 270.

*A. W. Gregg* and *P. W. Brown*, for appellee.—1. In suits for damages for personal injuries, the value of plaintiff's lost time and his decreased capacity to earn money after his injury are both to be considered in estimating damages; and proof of the amount of wages that plaintiff was receiving at the time of his injury, is proper to enable the jury to compute such damages. Railway v. Curry, 21 Am. and Eng. Ry. Cases, 448.

2. The evidence shows that the conductor was incompetent, and that his incompetency caused the injury. Bonner & Eddy v. Whitcomb, 80 Texas, 178.

3. It is sufficient if a petition set out the various items of damage sustained, without stating the amounts of each separately, and then stating the amount in gross; at least it is too late to object by exception to evidence. Railway v. Curry, 21 Am. and Eng. Ry. Cases, 448.

PLEASANTS, ASSOCIATE JUSTICE.—This is an appeal from a judgment rendered for appellee against appellants for the sum of $4000, as damages for injuries received by appellee while in the service of the receiver of said road, as fireman upon one of its locomotives. The plaintiff charged in his petition, that his injuries were the proximate result of the negligence of the conductor of the train, and that said conductor was by reason of

his intemperate habits an unfit and unsuitable person for the position of conductor, all of which was known to defendants, and was unknown to plaintiff.    The defense was contributory negligence by plaintiff, negligence of his fellow servants, and the plea of general denial.

The evidence shows that the conductor had the reputation of a man who drank to excess.    Only one of several witnesses who testified on the subject had ever seen him drunk while on duty, though several testified that they had seen him under the influence of liquor; and one of these had seen him full on several occasions while upon the trains of defendant company.    The only evidence tending to establish that he was drunk at the time the plaintiff was injured was the testimony of one Harris, who testified, that about 7 o'clock a. m. on the day after the wreck in which plaintiff was injured, the conductor met him and inquired if he had any whisky, and from his appearance witness thought he was then under the influence of intoxicants; while on behalf of defendants, it was shown by the testimony of the engineer of the train, who was contradicted by no one, that he met the conductor about one hour after the wreck, and conversed with him, and that he was then perfectly sober, as he was some hour and a half before the wreck occurred.    The wreck was on the trip from Palestine to the city of Houston, and occurred early in the night of October 7, 1890. The name of the conductor was Al Ray, and the conductors upon the trains of defendants were employed by his father, the latter being the officer of the company with whom was lodged the power to employ and discharge the conductors of the trains running upon defendant's road.

At the time of the trial the road had been returned to its owners and the receiver discharged.    The receiver had made improvements upon the property while in his possession, which exceeded in value the amount of the verdict rendered for plaintiff.

As the train neared a certain tank, the plaintiff was ordered by the engineer to go on the top of the tender, and when they reached the tank to fill the boiler with water; and when within a mile or so of the tank the engineer called, by signal, the brakeman, and instructed him to cut the two cars next to the tender from the rest of the train, and to hold it while he, with the locomotive and the cars attached to it, could go to the tank and obtain a supply of water and return to the train.    The cars were disconnected by the brakeman, as directed, and the engineer, with the plaintiff, proceeded to the tank, and while there, and when the plaintiff was engaged in taking water, the portion of the train which they had left behind came down upon them with great force, and the plaintiff was badly injured.    He was thrown from the car upon which he was standing at the time of the collision, and he has never recovered from the injuries he then received.    The evidence shows his capacity for labor is much impaired.

He denies that he heard the engineer give the orders to the brakeman to cut the train in two parts, and to hold the rear part until the locomotive and its connections could be taken to the tank and brought back to the other portion of the train; but the testimony of the engineer is that the plaintiff was standing between himself and the brakeman when the order was given to the latter.

The train did not stop to make the disconnection, but the speed of the locomotive was slacked to enable the brakeman to draw the coupling pin. The train consisted of forty-five cars, and the conductor was in his car, which was at the extreme rear end of the train, and there is no evidence that he was aware of the fact that the train had been cut into two parts until after the collision. The engineer had taken water at another tank, and no one knew of his intention to take water at this tank until he gave orders to the brakeman to cut off and hold the rear portion of the train. It was against the orders of the company to cut the train for the purpose of taking water, but it was the custom of the train men to disregard this order when water was taken at this particular tank. Plaintiff had been working on this section of the road but a very short time, and knew nothing of this custom. The conductor had control of the train and of all the train men. It was the brakeman's duty to have held the rear portion of the train in position until the return of the engine from the tank. The charge that the conductor was unfit for his position rested solely upon his alleged intemperate habits.

One of the assignments of error is, that the verdict is not supported by the evidence. This assignment, we think, is well taken, and the verdict should have been set aside and a new trial granted. To authorize a recovery by the plaintiff, he must establish not only the fact that Ray's habits were such as rendered him unfit for the position of conductor, and that this was known or should have been known to the defendant receiver, and was unknown to plaintiff, but in addition, plaintiff must show that by reason of his habits of intemperance Ray was guilty of the negligence complained of, and that such negligence was the proximate cause of plaintiff's injuries.

The plaintiff charges, "that the conductor permitted, caused, and allowed that part of the train left behind to come down upon and strike and wreck the other part of the train." It was necessary to establish this charge by competent evidence, and this was not done by proving that Ray was a man who drank to excess, and that the hinder part of the train did come down upon and wreck the other part of the train, and thereby injured plaintiff. The evidence tends to show that the wreck was caused by the failure of the brakeman to obey the instructions given him by the engineer, and that the conductor was ignorant of the fact that the train was divided by order of the engineer; and if this be so,

the company nor the receiver would be liable to plaintiff for damages, unless the ignorance of the conductor as to what was being done by the engineer was itself negligence, and there is no evidence before us which warrants such conclusion.

The appellants, not being satisfied with the charge of the court, asked that the following instruction, among others, be given to the jury: "If the conductor knew nothing of the detachment of the train, and by reasonable diligence could not have known it, and it was done without his direction and without his knowledge or consent, then defendants would not be liable, and plaintiff can not recover, no matter what the habits of the conductor were or what his condition was at the time of the accident." This instruction was refused. In our judgment the instruction should have been given, and its refusal was error.

We have duly considered all of the other assignments made by appellants, although some of them might perhaps have been ignored by us because not made in accordance with the rules of practice; but we do not find that the court committed any of the errors charged to it by such assignments. The court did not err in permitting the plaintiff to introduce evidence of damage sustained by him from loss of time by reason of his injuries. Plaintiff, in his petition, makes this allegation: "He has been unable from the time of his injuries until the trial hereof to follow his occupation, or perform other labor, so that said time has been wholly lost to him." This averment was sufficient to admit the evidence objected to.

For the errors indicated in the opinion, the judgment is reversed and the cause is remanded.

*Reversed and remanded.*

Delivered December 21, 1893.